Good morning, Your Honors. H. Scott Levien on behalf of the appellant. May it please the Court. I wish to begin by focusing on the instructions issued by the Court to address the correspondence about the Furleckin matter that we identified so that it's clear precisely why we drew attention to Furleckin, and how we think it might offer some additional guidance here, what our position is on that case. First of all, this case presents two widely divergent positions. Ours is that California has strict liability requirements for wages, hours, and working conditions that govern both meal periods and the payment of minimum wages. The defendant has responded predominantly by arguing that there are a number of exceptions to these strict liability requirements that include the intent behind the employer's actions, the intent behind the employee's actions, that substantial compliance is good enough compliance. All of these are factors that are inconsistent with a strict liability provision. In Furleckin, the issue that has been accepted by the California Supreme Court pertains first and foremost to the minimum wage claim that exists in our case, which has been ignored at all stages. The district court defendants' respondents on appeal have overlooked the minimum wage claim at all times. But in Furleckin, the question was, if employees have the discretion to bring a bag with them to work or not, would the employer be subjected to a minimum wage payment obligation if the employer chose to take control of the employee and search them when they brought the bag? The question that is going to be answered is, does that voluntary decision by the employee trigger, nevertheless, the obligation to pay minimum wage? I thought the question was whether or not it was voluntary as a matter of law or not. Well, the question is whether the action of the employee in voluntarily bringing the bag can create the wage payment obligation when the employer then searches the employee. And prior to Furleckin, our answer would be, absolutely it can, because California has a disjunctive test for when time is compensable. It is different than federal law. And under California law, it's either if the employer suffers or permits or if the employer controls the employee under any circumstances imposes control. And that control test is applied so strictly that in Mendiola, the California Supreme Court said, unlike federal law, if an employee is sleeping on premises, they have to be paid while they're sleeping if they are on call. Yeah, if they can be awakened. If they can be awakened, whereas federal law allows for a... They'll fight the fire. Right, and federal law allows for an eight-hour sleeping time to be excluded from compensation, but not under California law. California's legislature has made a policy choice to impose a strict liability standard on compensation. So these people have a choice, right? The choice here... If they take the food, they get free food, they eat it, there, right? The deal, the premise that's offered by Taco Bell is we will give you half-priced food, but if you accept half-priced food, you must eat it on premises. Right, so to make sure that it's being consumed and they're not stealing food. Well, that... If they bring their lunch, what happens? If they bring their lunch, the employees can leave for 30 minutes and receive what California law requires, which is a 30-minute meal period entirely free of any control by the employer. So your position is that they ought to be able to take the half-priced food and leave the premises? For 30 minutes of totally uncontrolled time, which is the absolute standard. In Augustus v. ABM, the California Supreme Court repeated that any imposition of control whatsoever during a meal or a rest break is a violation of the free-of-all-control standard that's applied to both meal periods and rest breaks under California law. But employees are not required to take the discounted meals. They can choose not to. I don't see how the employer is forcing them. The issue isn't whether they're being forced to. Under Brinker, the California Supreme Court said... I thought the issue was control. The issue... Control suggests force, suggests... Control doesn't necessarily require force. In Brinker, the California Supreme Court said an employer can't even incentivize a waiver of a meal period or a rest break. And by offering discounted food, this seems... But counsel, how are they incentivizing the employee to be controlled by the employer? They're incentivizing by offering a minimum wage or very close to minimum wage worker half-priced food. But it's not free. It is not free, but this is... It's not free, right? It is not free. If you're a minimum wage worker, you have two options. You can bring your meal from home, which is essentially free. It's food that you've already purchased from home. Or you pay back to your employer 50% of the value of the meal. So how is free versus basically taking some of your wages and paying them back to your employer incentivizing you as the employee to remain in the control of the employer for your 30-minute meal break? I reject the premise that you're starting with in your question that the food brought by an employee is free. An employee has to purchase the food that they consume somewhere, whether it's at the grocery store or at their place of employment. When they are at Taco Bell, and Taco Bell, which already has fairly low-cost food as a fast-food type of restaurant, offers that food at half price, this becomes an extremely attractive offer when you compare that to the time required to prepare your own food that you purchase with your wages in a store. So the issue is that you are being encouraged to sacrifice your right to a free meal period and relinquish your right to be free of all control. But tell me how. So if you're paying $2.50 for a meal, say, right? Because Ms. Rodriguez says that many times. Sometimes she was purchasing a $5 meal. So that would be $2.50, right, for a meal. And if you made a peanut butter and jelly sandwich and brought an apple from home, the cost of that would be less than paying $2.50 back to Taco Bell. You could potentially come up with a meal that you prepare at home that is slightly less than the discounted meal. In the record, Ms. Rodriguez testified that she often spent around $3 for some food. So we're talking about $1.50. So you're talking about now pricing that is roughly analogous to the cost of any reasonable food that one could prepare, plus you have the opportunity cost of preparation time that you incur at home. So it's not simply a dollars-to-dollars. By giving this discount, you're offering an incentive. And California was clear. The California Supreme Court said an incentive to forego your 30 minutes of duty-free meal period time. I'm wondering what the limits are of your argument. Anytime the employer provides an incentive for the employee to stay and eat at his desk or stay on the premises, does that then become time paid? I mean, let's say you've got a company that does software, computer games, and they have terminals and they say, you know, anytime you're not working, you can play the games. So you can go out to lunch, you can stay in and use one of the terminals, you can stay after work and use the terminals, and they're just available. Does an employer have to pay minimum wage for those employees who are incentivized to stay and play the video games or use the computer software, use whatever service the employer provides on the terminals? I would distinguish your scenario. Why don't you answer my question first. The answer is no? The answer in your scenario would be, with no other facts, no, I don't think that would generate an obligation to compensate. Why? I mean, it's a valuable service. Presumably the video games are expensive and they're giving them free access during lunchtime and they could, you know, use their money to buy a video game and take it home and use it on their time, but, you know, they are given a chance to do it for nothing. So they stick it on the premises to use them to, you know, they eat their apple or whatever. How is that different? Well, because they're not receiving a direct instruction that you have to stay here if you accept the terms of the offer. Well, you can't take the terminal with you. You know, it's sort of bolted to the wall. And, you know, if you want to use the service, you know, whatever it is, the software, the video game, whatever service the employer is providing, which you get for free if you use the terminals, or you could buy and take home, you know, if you're going to do that. You can do it in your lunchtime. You can do it at your break. You can do it after work. Presumably you can't do it while you are working because you are working. Well, I would return to the standard articulated by the California Supreme Court, which says an employer can offer no incentive whatsoever to relinquish your right to 30 minutes of free time. Well, that's circular. That's really kind of circular. The control here that you're talking about is not that they are working, that they are serving customers. It's what, that they are, they have to sit in the restaurant to eat the half-priced food? They're restricted to the interior of the restaurant. When the meal period requirement of the California law requires that they be allowed to leave for the entire 30 minutes. But there's nothing that is requiring the employee to take that offer of the discounted food. And so, you know, and if you use an example that isn't even, and I wouldn't call Judge Kaczynski's example extreme, but something that happens all the time, what if the employer has a break room with a couch? And during your meal break, you can take a nap for 30 minutes. That is appropriate under California law. But you can't do it outside if you want to sleep on a nice couch. You can't sleep outside. You can't carry the couch outside. You are staying on the premises, correct? Right, you are staying on the premises. But in this instance, you're not working when you're staying in a break room. But when you are given an attractive financial offer. So then what was Ms. Rodriguez doing while she's eating on the premises? How is it that she's working? It is that it is not whether you are performing a task under California law that triggers the obligation to compensate minimum wage payments. It is that she is under control of the employer, which says you must sit here. You must sit here. Explain the policy to me. Just maybe I don't understand this. Does she have to what is the policy that she has to eat the food in the restaurant? She has to consume the food inside the restaurant. Does she have to stay in the restaurant for 30 minutes? She does not have to stay in for 30 minutes. But she is entitled to a full 30-minute meal period outside of employer control. But once she finishes the food, she could do whatever she wants. She could for the portion of the time, but she wouldn't be receiving the full break that she's entitled to under California law. And she would not be receiving minimum wage payment for the portion of that time that she is under the control of the employer, which also is an unwaivable requirement. Even though she accepts the agreement to take the food, California law requires payment while you're under their control. But, counsel, the policies that Taco Bell has are that she can't eat by the kitchen. She can't eat by the cash register. And during, you know, the 10 minutes that she's eating her lunch, she's not being asked or could be asked to do anything in terms of duties. Isn't that correct? The fact that she is sitting in a place directed by the employer to eat that food means they have imposed a measure of control. But how is it different than a break room, right? If you can't take the break room outside, right? So your employer is essentially saying to you, if you want to use the break room, you have got to stay here to use the break room. They're not movable objects. You can't lift the couch and take it outside. But the meal is movable. It can be carried outside. How is that different than this policy? Because under this policy, food that she could in any other circumstance, if she bought it from the restaurant next door or brought it from home, she could walk outside or down the block and sit on the park bench to eat. This food, she cannot. So the employer has a financial advantage in its pricing and has the employee right there in a store that is staffed at the minimum possible level. And so the employees who are eating the food are sitting right there in case a rush hits and the employer wants to invite them back or call them back. Where in the record is that, where she has ever been called back or interrupted during her meal period? I do not believe there is anything in the record that says she was interrupted. But she was clearly placed under control. She was told by her manager, you must stay here. And she followed that instruction. I'm sorry. So this was completely voluntary, right? I disagree that it's voluntary. She's been incentivized to waive a break. And while she's under the control of the employer, that time is compensable. And that is a question that Furlecken will more directly answer. Is a volitional act by the employee subjecting them to control of the employer still compensable time? So that is why we focused on Furlecken, because the minimum wage portion of the appeal would get a more directly analogous answer, probably, from the Furlecken appeal once the California Supreme Court addresses that. On the minimum wage side. Thank you. Thank you. Okay. Thank you. Good morning. May it please the Court. My name is Nora Stylestein. I represent Appellee Taco Bell Corp. Taco Bell controlled its discount, not Ms. Rodriguez. The undisputed facts establish that Rodriguez's purchase of discounted menu items during her off-duty meal period was a genuine, voluntary choice that she made after Taco Bell relieved her of all duty and relinquished all control. Do we know why the employer requires eating the meals on the premises? Yes, Your Honor. The discounted menu items are to be eaten on premises to curb abuse of the policy, essentially to prevent theft. The thrust of the policy, the spirit of the discount, is for employees, not for their friends or family. So to ensure that a reasonable amount of food is purchased, Taco Bell asked, well, required the employee who voluntarily purchased discounted menu items to eat that discounted food on premises and then was otherwise released and free to go. So that the employee is required to, if the employee chooses to purchase the food at half price, the employee has to eat the food on the premises, but the employee doesn't have to stay on the premises for the full 30-minute break period? Correct. And the employee is also free to purchase the discounted menu items before the shift begins, after the shift ends, per the policy. Ms. Rodriguez admitted that she purchased discounted menu items during her paid rest breaks, and she could also control when in her meal period she would choose to purchase the discounted menu items. For example, she was free to leave, Taco Bell relinquished all control. She could talk on the phone with her family. She could run some errands and then return to the restaurant with 10 minutes left in her meal period, purchase discounted menu items, eat them in the restaurant, and get back to work. To prioritize and use my time efficiently, I would like to address some arguments that are not in our briefing. As for this Apple case that appellant has brought to the Court's attention, in that case, it's a case about bag checks, where employees voluntarily brought bags to work, and then Apple required those bags to be checked before they could exit the store. No stay is warranted because the California Supreme Court's answer to the certified question will not assist the Court here in evaluating the district court's decision. The facts here are undisputed, that the Taco Bell menu, discounted menu items, purchasing them was voluntary. I refer the Court to page 13 of the order certifying the question to the California Supreme Court, in which the Court emphasized that they were uncertain as to whether bringing a bag to work is truly a genuine choice or whether it's actually an illusory choice. That is the law. If I understand it, the law of California is that if it's a voluntary decision, you're not compensated. But if it isn't, you are. And if you can either ride the bus or not ride the bus, it's voluntary. But the question, because bags, people, almost everybody carries some kind of bag or something, whether it's really a voluntary choice to bring a bag, is that within the meaning of California law? Is that what was certified? Correct. That's why the question was certified to the California Supreme Court. That's why the guidance was needed. The Apple employees have to have not just their bags checked, but also their cell phone to confirm that it's an Apple product of their own purchasing. Here it is well established in the record that Ms. Rodriguez could choose to participate in the discount or not, and on some shifts she did not. She brought food from home. Or there are other shifts where she purchased menu items at full price. I'm not fully understanding why you think the California Supreme Court's answer won't be helpful. Won't it clarify what it means to be voluntary? It may clarify what it means to be voluntary, but it will be clarifying what it means to be voluntary in the specific facts of the certified class in the Apple case. Here there's no doubt, it is undisputed, that the purchases made by Ms. Rodriguez were truly and genuinely voluntary. Unlike the Marillion case cited. Were they any more voluntary than the decision to bring a bag to work? I mean, people can leave bags home. Correct. You can leave your bag at home, but the question before the California Supreme Court is whether in the context of modern life where everyone really has a cell phone and brings personal items to work, yes, they bring them to work for their personal convenience, but is that somewhere on the spectrum between a genuine choice and an illusory choice? Here the choice is genuine. The purchase of discounted menu items, there's really no debate as to whether, there is no debate as to whether or not the employees may use or not use the discount. As for the record, I'm sorry, doesn't the record reflect instances where Ms. Rodriguez chose not to use the discount? Yes. That is correct. What if the employer has a lunchtime raffle? And if you stick around for the raffle, which takes 10 minutes, you could win $10,000. Is that voluntary? Yes. You think that's more voluntary than bringing a bag to work? Yes. If the employer were to say, if you stick around for the raffle and continue clearing the tables, that would, it would still have to be compensated, right? Well, correct, yes, because, so just to make sure I understand the hypothetical, if there's a raffle for a large prize during the employee's off-duty time, the employee may choose to participate in that raffle or not. If that employee then participates in the raffle and is given an instruction to perform work duties, to be available to perform work duties, then yes, that would be compensable time. So you're answering my question. I thought you were clarifying my question. My question does not involve work duties. Judge Schroeder added work duties and said that's distinguishable. Correct. But you said you were clarifying my question. My question did not involve work duties. Correct. I wanted to make sure I understood your hypothetical correctly, that it was a raffle. So you misunderstood it because you added work duties. Oh. She was trying to respond to me. I'm sorry, Your Honor. She said she's clarifying the hypothetical, the question. The question did not involve work duties. Okay. So the basic hypothetical asked by Judge Kaczynski was, if the employer has a raffle during the break period and says, if you stick around and participate in the raffle, you may win $10,000. Is that more voluntary or less voluntary or not voluntary at all as compared to the question that's certified in the Apple case? Thank you. Thank you for that clarification, Your Honor. Yes, the raffle during a break would be more voluntary. It would be a genuine choice. I don't think there's really any doubt for that because there's no condition precedent that would require that employee or really incentivize that employee to stay other than perhaps a windfall of funds. I'm sorry? The only reason to stay would be the potential windfall of funds of winning the raffle. You can choose to do that or not. If Matthew will consider the chance to win $10,000, I don't know. I would think that's a pretty good incentive. I would bet that if Taco Bell made that kind of offer to its employees, a lot of them would stay at lunchtime. I would think some of them would call in sick, would come in just to be there for the raffle. That's a good deal. I myself would put on a name tag, Your Honor. There we go. I don't know why you think that is more voluntary than bringing a bag to work. I'm not familiar with the Apple case closely, but most women wear purses, I believe. Purses would be the kind of bag that's searched, right? And many men carry satchels or briefcases to work. I mean, I guess they could leave it all home, but then they have to. I mean, I'm trying to think of what I might do if I had to bring my briefcase home. I'd have to tuck my papers in my pants or something. Well, that's why it was certified. Yes. I mean, I guess it's voluntary in a sense, but it would be certainly inconvenient, highly inconvenient. So I don't know. Those things just don't seem to me to be that different. My position, our position, Your Honor, is that the answer to that certified question doesn't, that guidance isn't needed to affirm the district court here. The district court Well, of course not. If we wanted to affirm the district court, if that were the objective, then of course we shouldn't wait. We shouldn't even continue this argument. We should just go ahead and affirm the district court, right? But we're trying to really figure out how we get to the right answer. So that's really the objective. And if the Supreme Court of California is about to speak on the question of voluntariness, of what is voluntary in an employment context for purposes of this very statute, why, wouldn't it be foolish of us not to wait and listen to them? No, it would not be. Well, it would be foolish. It would not be. It would not be foolish. It would not be necessary. But if the Supreme Court of California were to say this is not voluntary within the meaning of our law because, as it was teed up to the court, because it's not really a choice to carry a bag, this is done so routinely, that wouldn't have any effect on this case at all, would it? It would not. And I point you to the excerpts of the record at 418 and 447, which establish as an undisputed fact that the discounted purchases were completely voluntary in this case. And, Counsel, if Ms. Rodriguez were to purchase a full-price meal, there were no limitations at all, correct? Correct. She was treated just as any other customer. She was free to, she could have eaten her meal in the restaurant, outside of the restaurant, taken it home, whatever she wanted to do if it was a full-price purchase. Correct. She didn't have to go through drive-through. None of the employee discount sort of triggers would occur because she was paying just like any other full-paying customer. I want to briefly address a few of the arguments made by Counsel for Appellant. There is no strict liability in California regarding meal periods. Brinker is the law of the land regarding the employer's obligations under the Labor Code to provide a 30-minute off-duty meal period to relinquish control, to relieve the employee of all duties, and not to incentivize or discourage breaks. There is nothing in the record that Ms. Rodriguez was expected to be available or expected to be vigilant or to be responsive to requests to return to work while she was eating her discounted menu items. There is no evidence in the record that the restaurant was understaffed or did not have sufficient staffing to allow employees to enjoy discounted menu items comfortably and uninterrupted in the dining area of the restaurant. Also, as the Court has already pointed out, the issue of control is one that if an employee is subject to the employer's control, it means there was a lack of choice. The Marillion case where the workers were on a bus that was transporting them to the fields, that was required. They didn't have a choice. If they used their personal vehicles to arrive to the field, they were disciplined verbally and could even be sent home for the day. Again, it is undisputed in the record before the Court that the purchases here were completely voluntary. As for the unfounded speculation regarding incentive and whether Ms. Rodriguez was incentivized to purchase the discounted menu items because of her wages or otherwise, again, that is unsupported by the evidence in the record and before the Court. This is a case about Ms. Rodriguez who voluntarily purchased menu items or not on her shift, subject to her personal decisions. I thank the Court for the time, and we ask that you affirm the district court's decision in its entirety. Thank you. Thank you. I think you're out of time. We'll give you a minute for rebuttal. One minute, Your Honor. I just want to point out that the question that District Judge Ellis asked regarding the difference in treatment between a full-price and a half-price meal actually highlights the fact that under Brinker, this is a violation on the meal period claim here. If you are treated differently, if you purchase the full-price meal and can take it and leave the restaurant, then using the plain meaning of the word incentive, which is prohibited by the California Supreme Court in Brinker, it seems to me that the half-price meal is, in fact, effectuating the very incentive that California has said is forbidden as a means of obtaining a relinquishment of the full meal period. So when you have the ability to compare these side by side, you've demonstrated the incentive, and the record actually shows that Ms. Rodriguez took one meal a month roughly brought from home, and the rest she utilized the restaurants. So on a summary judgment motion, that should be sufficient evidence to allow the trier of fact to decide the question of whether there was voluntariness, whether there was choice, or whether there was an incentive to forego there. Thank you, Your Honors. Thank you. Thank you.
judges: Schroeder, Kozinski, Ellis